UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DARRON SHAW,                          )
                                     )
        Plaintiff,                    )
                                     )
v.                                    )
                                     ) C.A. #1:05CV01284 (CKK)
THE DISTRICT OF COLUMBIA, *et al.*,   )
                                     )
        Defendants.                   )

## MEMORANDUM IN OPPOSITION TO MOTION FOR STAY

### Background

In this suit, Darron Shaw, a private individual with no connection with the Department of Justice or any other governmental entity, has sued the District of Columbia and five of its police officers for having been seized and beaten by defendant police officer Kevin Davis utterly without cause, in the presence of the other named defendants.

Despite multiple attempts to serve the defendant police officers, only one has been successfully served to date. The others have avoided service through a variety of devices, including refusing to collect certified mail, failing to return waivers of service, and failing to appear at the police station as scheduled when process servers were awaiting their presence. A motion is pending to deem those defendants served. As yet, none has made an appearance in this case.

The District of Columbia now brings a motion to stay these proceedings, relying for the most part on the interests of the defendant officers, primarily their Fifth Amendment rights. The District confirms that a criminal investigation conducted under the auspices of the United States

Attorney is ongoing, and that it is anticipated to take "another three to six months" to complete. Memo at 2. The District does not reveal the identities of the particular defendants who are the subject of the investigation, nor whether the investigation is limited to Mr. Shaw's beating or covers a broader scope. The officers have not joined the District's motion for a stay.

For the reasons detailed herein, the motion to stay should be denied. At most, the court could, in its discretion, enter a protective order barring the disclosure of discovery materials to third parties. Plaintiff would not object to such relief.

<u>Discussion</u>

As the District notes, the question of a stay should be addressed using a balancing test considering the interests of the parties, the public, the courts, and identified non-parties. *See generally Ellsberg v. Mitchell*, 353 F. Supp. 515 (D.D.C. 1973); *U.S. Commodity Futures Trading Commission v. A.S. Templeton Group, Inc.*, 297 F.Supp.2d 531, 535 (E.D.N.Y. 2003). This inquiry should be guided by the principle stated best in one of defendant's cases:

> It would be perverse if plaintiffs who claim to be the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently egregious to have attracted the attention of the criminal authorities.

*Sterling National Bank v. A-1 Hotels International, Inc.*, 175 F.Supp.2d 573, 575 (S.D.N.Y. 2001). With this in mind, the courts have developed a number of factors to be considered when deciding a motion for a stay. Here, these factors weigh heavily against a stay.

A. <u>No Indictment Has Been Issued, Nor is One Immediately Forthcoming</u>

The courts will not ordinarily grant a stay when no indictment has been handed down. *Id.* at 576-7. The reasons for this are aptly stated by the *Sterling* court. "[I]t is inherently unclear to the Court just how much the unindicted defendant really has to fear. Conversely, the delay imposed on the plaintiff is potentially indefinite." *Id. See also U.S. Commodity Futures Trading Commission v. A.S. Templeton Group, Inc.*, 297 F.Supp.2d 531, 534-5 (E.D.N.Y. 2003) (declining to issue stay, distinguishing numerous cases where indictments were either issued or pending). The court in *Templeton Group* aptly noted that "[d]efendants' countervailing interest in avoiding the use of their Fifth Amendment privilege is minimal at this time because any parallel criminal proceeding is purely speculative." *Id.* at 535. Just so here, where there is no indictment and no guarantee that the Department of Justice will seek an indictment.

It is pure speculation as to *which* defendants might be indicted, or are even under active investigation. Officer Davis is clearly the main culprit in this case, as it is he who beat Mr. Shaw. If this is the focus of the federal investigation, there is no reason to believe that officers Geer, Green, Nguyen and Underwood are likely to be indicted. This resembles the situation at issue in *Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*, 486 F.Supp. 1118, 1119 (S.D.N.Y.1980), where the court denied a stay even after an indictment because only one defendant was indicted, and it would have imposed an additional unfair burden on the plaintiff to delay its relief against all defendants while awaiting the prosecution of only one.

B. The Government Has Not Brought the Civil Suit,
   Nor is The Department of Justice Involved

The courts look upon a stay with disfavor when the government has not brought the civil proceedings. Where the government is involved, the concern is that it might use the civil litigation to obtain an unfair discovery advantage in the criminal matter. *See generally, Sterling,* 175 F. Supp.2d at 578-9. Here, no government entity initiated the civil litigation. While the District of Columbia is a party, it is not conducting the criminal inquiry. The investigation to which the District appeals is a federal investigation conducted by the United States Department of Justice. Memo at 2.

The District of Columbia does not have standing to assert the Fifth Amendment rights of its employees. *See generally Bryson v. United States,* 419 F.2d 695 (D.C. Cir. 1969) (vicarious assertion of Fifth Amendment rights not permissible). Except for one officer – who has not sought a stay – the individual defendants have not appeared for themselves, having done all they can to avoid having to defend their interests in this litigation. The District, of course, neither has nor claims any Fifth Amendment rights of it own.

The District claims its interest is implicated because it has an agreement with the Department of Justice not to compel officers to speak about a situation where criminal prosecution is pending. Memo at 5. However, the District should not be heard to claim that its decision to enter in an agreement that ties its own investigative hands should entitle it to stay litigation against it based on the wrongdoing of its agents and its own alleged wrongdoing.

If the court remains concerned about the Fifth Amendment rights of the wilfully absent individual defendants, there are ample options short of a stay to preserve them. Most obviously, this court can enter a protective order barring the parties from disclosing materials produced during discovery to third parties, including federal investigators. This will permit the defendants to avoid prejudice in a criminal trial while preserving the plaintiff's and the court's interest in moving the case forward. The court in *Securities and Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980) noted that "an appropriate protective order" is one option to adequately protect parties facing civil discovery on the subject area of a potential criminal prosecution. Similarly, in *Digital Equipment Corp. v. Currie Enterprises*, 142 F.R.D. 8 (D. Mass. 1991) the court refused to stay pending civil litigation in a situation similar to the one at bar (for many of the reasons detailed in this memorandum), but directed the parties to submit a protective order to deal with matters such as sealing interrogatories and deposition transcripts.

C. The Balance of Interests Favors Denying the Stay

As the court noted in *Sterling,* 175 F. Supp.2d at 578 n.4, the defendants' constitutional rights are not actually at risk. They retain a privilege not to testify, in either the civil or the criminal matters. It is settled law that any sanction that they suffer in the civil proceedings as a result of this refusal to testify does not work a constitutional violation. *Baxter v. Palmigiano*, 425 U.S. 308 (1976). While such a sanction represents a cost attached to the exercise of their constitutional rights, many exercises of constitutional rights have costs. The much narrower

remedy of a protective order barring disclosure of discovery would adequately address the cognizable rights here at issue.

By contrast, plaintiff has strong interests in the prompt resolution of his dispute. As the court pointed out in *Sterling, id.*, two factors weigh heavily in assessing whether a stay would unduly injure the plaintiff's interests. First, the individual defendants' dilatory tactics have already wasted a significant amount of time. In this connection, Mr. Shaw would respectfully refer the court to his motion seeking to deem the individual officers served.[1] The *Sterling* court also noted that "permitting a further delay during which assets can be dispersed or hidden – or called upon for the expensive business of defending a grand jury investigation and potential criminal litigation – will increase the risks that plaintiff could succeed in the litigation, without being able to collect on any judgment." *Sterling,* 175 F.Supp.2d at 579. Just so here.[2]

The courts have an interest in avoiding unnecessary stays. "Convenience of the courts is best served when motions to stay proceedings are discouraged ... []Stays can] become a source of delay and an interference with judicial administration." *A.S. Templeton Group,* 297 F.Supp.2d at 535-536, (quoting *Arden Way Associates v. Boesky,* 660 F. Supp. 1494, 1497 (S.D.N.Y. 1987)). This factor, too, weighs against a stay. *Accord, Paine, supra* 468 F. Supp. At 119 (noting fear of "a constant source of delay and an interference with judicial administration").

---

[1]It is curious indeed that the District refers to Mr. Shaw's purported failure to "yet properly serve[] any of the individual defendant officers" (memo at 2) as a reason to support a stay, when the reason that service has not been successful on all but one of the officers has been because of their assiduous refusal to collect their mail, appear at the police station as scheduled, etc., in an apparent attempt to avoid just that service.

[2]Once again, the District curiously cites the fact that Mr. Shaw is seeking money damages as a reason to stay the litigation, rather than a reason to conclude it quickly. Memo at 6.

The District also claims that there is a potential conflict of interest, presumably preventing representation of both the officers and the District by the same counsel, which a stay would allegedly avoid. Memo at 6. The District offers no explanation for this position, and it is difficult to see how it depends on the pendency of a criminal investigation at all. Should the District defend the instant lawsuit by pointing the finger of blame at the individual officers and disclaiming its own responsibility, there will be a conflict of interest with or without an ongoing criminal investigation. Should the District defend the propriety of the officers' behavior, the fact that the United States is investigating that same behavior will not create a conflict.

D. <u>Defendant's Cases are Inapposite or Favor Mr. Shaw</u>

The sheer quantity of cases that the District cites for various dicta about the standards for granting a stay cannot conceal the fact that the more relevant of those decisions actually declined to stay their respective civil suits. Those that granted stays did so where the defendant's interests were far more pronounced than appears here.

*Brock v. Tulkow*, 109 F.R.D. 116 (E.D.N.Y. 1985) was a civil suit brought by the government, which implicated the concerns noted above about misuse of civil discovery to support criminal prosecutions. The court thus noted that a stay is "more appropriate when both actions are brought by the government." *Id.* at 119. Moreover, *Brock* has dubious precedential value. In *United States v. Private Sanitation Industry of Nassau/Suffolk, Inc.*, 811 F.Supp. 802 (E.D.N.Y. 1992), the court declined to follow *Brock* and correctly noted that the Fifth Amendment interests in avoiding a parallel civil suit are "minimal." *Id.* at 807. *Gordon v. Federal Deposit Ins. Corp.*, 427 F.2d 578 (D.C. Cir. 1970) is inapposite for the same reason. In

addition, the court in *Gordon* denied a stay. The court in *Sterling National Bank v. A-1 Hotels International, Inc.*, 175 F.Supp.2d 573, 575 (S.D.N.Y. 2001) denied the requested stay, pointing out that the interests of the private plaintiff bringing the civil action were not the same as the interests of the governmental entity that brought the criminal prosecution, and also that the defendant had not yet been indicted. *Id.* at 578-579.

The District relies heavily on *Securities and Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir. 1980). However, this reliance is misplaced, for *Dresser* too denied the stay. Moreover, the *en banc* court in *Dresser* went further, vacating a panel decision which had imposed a protective order barring the plaintiff from sharing information with the Department of Justice, then bringing a parallel criminal indictment.

The defendant's interests were stronger in *Cruz v. County of DuPage*, 1997 WL 370194 (N.D. Ill. 1997), where the defendant had already been indicted. Indeed, the *Cruz* court specifically distinguished *Dresser* on that ground. The same applies to *Doe v. City of Chicago*, 360 F.Supp.2d 880 (2005), where the government had already charged the defendant with the crime at issue, and where the court again distinguished *Dresser* on that ground. Much the same is the case with regard to *Volmar Distributors, Inc. v. The New York Post Co., Inc.*, 152 F.R.D. 36 (S.D.N.Y. 1993), which specifically relied on the fact that all but one of the several moving defendants was under indictment, and that this represented "the strongest case for granting a stay." *Id.* at 39.

*Jones v. City of Indianapolis*, 216 F.R.D. 440 (S.D. Ind. 2003) lends some support to the District's argument, but that support is slight indeed. The court granted a stay for only ninety days, and only of discovery taken from the particular witnesses who were subject to

investigation.  Accordingly, the court found that the plaintiff's interest in avoiding a stay was minimal.  The court expressly permitted the plaintiff to take discovery of other witnesses.  *Id.* at 451.  Defendant's request here is not so modest.  It requests a stay of the entire proceeding, or, alternatively, a stay of all discovery (which amounts to much the same thing).

In *Walsh Securities, Inc. v. Cristo Property Mngmt., Ltd.*, 7 F. Supp.2d 523, 529 (S.D.N.J. 1998), the burden on the defendants in the civil case was unusually significant, sufficient to justify a pre-indictment stay because the defendants were fighting among themselves in a complex real estate fraud case.  "[T]he defendants (who have filed numerous cross-claims against each other) may be wary of revealing criminal defense strategy to their potential codefendants."  *Id.* at 527.  This factor is absent here.  Moreover, the governmental entity that was bringing the criminal prosecution expressed a concern, also absent here, that a civil suit might reveal the testimony of its own planned criminal witnesses.  *Id.*  In addition, in *Walsh*, the court did not stay the entire case, or even all discovery, but only depositions and interrogatories – once again, a stay much more modest than the District's instant request.

The language the District cites from *Founding Church of Scientology v. Kelley*, 77 F.R.D. 378 (D.C.C. 1977) is irrelevant to the matter at hand.  This decision merely established limits on the power of a potential criminal defendant to obtain, via civil discovery, information about the grand jury proceedings against him.  The case has nothing to do with stays, or with the interests of third-party plaintiffs suing potential criminal defendants.  It merely states the commonplace that a criminal defendant is not permitted deliberately to compromise the secrecy of a grand jury investigation against him via civil litigation.  Similarly irrelevant is *Twenty First Century Corp. v. LaBianca*, 801 F.Supp. 1007 (E.D.N.Y. 1992).  There, the stay was not sought only by the

defendant on Fifth Amendment grounds, but also by the government, having intervened in the suit to protect its own criminal prosecution and ensure that the defendant, who had already been indicted, would not be able to circumvent the restrictions on criminal discovery. In the instant case, in contrast, the Department of Justice has not intervened, and there has been no claim that Officers Davis *et al.* – who are sworn law enforcement officials – are going use Mr. Shaw's lawsuit to circumvent discovery limitations in their hypothetical criminal cases.

Much like *LaBianca* and *Founding Church of Scientology*, *Ellsberg v. Mitchell*, 353 F. Supp. 515 (D.D.C. 1973) is not relevant here. In *Ellsberg*, the government sought a stay of a civil suit brought by the defendants in a concurrent criminal prosecution, on the theory that the suit might interfere with the prosecution. Here, the civil suit is brought against the defendants in a hypothetical criminal prosecution, and the District's stated concern is apparently that the suit might *help* the prosecution, by undermining the Fifth Amendment rights of the police officers. To the extent *Ellsberg* is relevant, it is helpful to Mr. Shaw. The court correctly ruled that the civil suit would not be stayed, because the government had not made a specific showing that it would interfere with the criminal prosecution.

The District cites *Tuite v. Henry*, 98 F.3d 1411 (D.C. Cir. 1996) for the uncontroversial position that the law enforcement investigatory privilege exists in part to enable citizens to come forward and speak freely to the police about crimes they witness. It then stretches the case beyond all recognition to suggest that this principle suggests that "the public interest supports a stay in this case" (memo at 7) because *this suit* somehow "runs the risk of ... discouraging reluctant witnesses to come forward." The District has not explained, and can not explain, how this is possible. Presumably, Mr. Shaw (unlike a criminal defendant) has just as much interest in

-10-

having witnesses come forward in this case as the Department of Justice does, and can hardly be expected to discourage those witnesses. Indeed, witnesses identified by Mr. Shaw may well become government witnesses in the forthcoming prosecution.

<u>Conclusion</u>

The defendants have no non-speculative interest in staying this case. By contrast, Mr. Shaw and this court have strong interests in seeing this case move forward on schedule. The District's motion for stay should be denied.

Respectfully submitted,

DARRON SHAW,

By counsel

Dated:   October 28, 2005

Counsel for plaintiff:

_____
Victor M. Glasberg, #927798
Paul Gowder
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
(703) 684-1100 / Fax: 703-684-1104
vmg@robinhoodesq.com
Shaw\Pleadings\OppMStay

-11-

<u>Certificate of Service</u>

I, Victor M. Glasberg, hereby certify that a true and accurate copy of the foregoing Memorandum In Opposition to Motion for Stay was served as indicated below, on this 28th day of October 2005, to:

<u>Electronically:</u>

Carl J. Schifferle, Assistant Attorney General
Attorney General's Office
441 Fourth Street, N.W., #600S
Washington, D.C. 20001

<u>By mail:</u>

Kevin Davis
Metropolitan Police Department
Third District Substation
750 Park Road, N.W.
Washington, D.C. 20009

Jonathan Geer
Metropolitan Police Department
Sixth District Substation
2701 Pennsylvania Avenue, S.E.
Washington, D.C. 20019

Keith Green
Metropolitan Police Department
Sixth District
100 42nd Street, N.E.
Washington, D.C. 20019

Minh Nguyen
Metropolitan Police Department
Sixth District
100 42nd Street, N.E.
Washington, D.C. 20019

Robert Underwood
Metropolitan Police Department
Sixth District
100 42nd Street, N.E.
Washington, D.C. 20019

Victor M. Glasberg