UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DARRON SHAW,

    Plaintiff,

    v.

DISTRICT OF COLUMBIA,

    Defendants.

Civil Action No. 05-1284 (CKK)

**MEMORANDUM OPINION**
(May 8, 2006)

Following the Stipulation of Partial Dismissal by the parties in this action, in which Plaintiff

Darron Shaw voluntarily dismissed Count V (assault and battery), Count VI (false arrest), and

Count VII (defamation) of his Complaint, Defendant District of Columbia filed a Revised Motion to

Dismiss or, in the Alternative, for Summary Judgment.  Defendant's Revised Motion seeks dismissal

of Count VIII of Plaintiff's Complaint, wherein Plaintiff contends that the District of Columbia

committed gross negligence by recklessly permitting a member of its police force, MPD Officer

Kevin Davis, to investigate a car jacking involving Officer Davis' mother "despite the fact that

District officials knew or should have known that such participation would create an unreasonable

risk of false arrests and physical assaults" by the officer "upon innocent citizens" – which, according

to Plaintiff, led to his injuries inflicted by Officer Davis on February 15, 2004.  Compl. ¶ 30.

Defendant contends that Plaintiff failed to provide it with the required statutory notice of this claim

pursuant to D.C. Code § 12-309.  *See* Def.'s Revised Mot. to Dismiss at 2.  Upon a searching

examination of Defendant's Revised Motion, Plaintiff's Opposition, the attached exhibits, and the

relevant case law, the Court shall deny Defendant's Revised Motion to Dismiss or, in the

Alternative, for Summary Judgment.

**I: BACKGROUND**

According to Plaintiff's Complaint, in the mid-afternoon of February 15, 2004, Plaintiff parked his car near the intersection of 62nd and Banks Place, N.E., Washington, D.C., in front of a public park across from the Watts Branch Recreation Center, so that he could install new wiper blades on his vehicle.  Compl. ¶ 5; Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet) at 3.  Plaintiff contends that he "had committed no crime, nor had any witness identified him as having committed any crime.  He was not engaged in any conduct which would have seemed in the least suspicious to a reasonable police officer."  Compl. ¶ 6.  Suddenly, several police cars pulled up to where he was standing.  *Id.* ¶ 7; Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet) at 3.  MPD Officers Kevin Davis, Keith Green, Jonathan Geer, Robert Underwood, and Minh Ngyuen then exited their vehicles, approaching Plaintiff and several other African-American males present in the area.  *Id.* ¶¶ 3, 7, 11.

While many of the officers then detained and cuffed several of the other African-American males in Plaintiff's vicinity, Officer Davis ran towards Plaintiff while shouting for him to put his hands in the air – an instruction with which Plaintiff complied.  *Id.* ¶ 7; Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet) at 3.  According to Plaintiff, Officer Davis then placed the barrel of his gun to Plaintiff's head while screaming numerous curses and insults at him.  *Id.* ¶ 8; Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet) at 3-4.  Officer Davis then repeatedly struck Plaintiff in the face with his fist, threw him on the ground, stood over him, and continued to pummel Plaintiff.  *Id.* ¶ 9; Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet) at 3-4.  During this attack, Plaintiff "was

2

lying on the ground, helpless, screaming in pain, and continually declaring his innocence of whatever it was" that Officer Davis "was so furious about." *Id.* While Officers Green, Geer, Underwood, and Ngyuen were present, they took no action as Officer Davis continued to "brutalize" Plaintiff by yelling at him, threatening to kill him, kicking him, stomping on him, and dragging him across the ground. *Id.* ¶ 10; Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet) at 4. Throughout this beating, no other officer intervened, and Plaintiff witnessed "a few of them turn[ing] their backs as if they didn't see the beating." *Id.* ¶ 17; Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet) at 5. Officer Davis concluded his assault by ordering Plaintiff to "remember my face" and informed him that "I'll lose my job today and kill you if she points you out." Compl. ¶ 10; Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet) at 4. Upon information and belief, Plaintiff now believes that the "she" referred to by Officer Davis during this encounter was Officer Davis' mother, who had apparently been the victim of a carjacking shortly before this alleged attack. Compl. ¶ 10. Officer Davis then returned to the passenger seat of his squad car and drove off from the scene with another officer. Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet) at 4.

Upon Officer Davis' departure, Plaintiff asked the remaining officers to call an ambulance to the scene, notifying them that he was having difficulty breathing and his neck was in pain. Compl. ¶ 12; Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet) at 5. Despite this request, Plaintiff was placed in handcuffs, and informed by Officer Green: "Don't nobody care about you. We'll call an ambulance once you pass out." *Id.* After a couple of minutes had passed, an onlooker called for an ambulance for Plaintiff.

*Id.*  Officers Ngyuen and Green then searched Plaintiff's clothing and person, and Officer Ngyuen

rode with Plaintiff to Greater Southeast Community Hospital.  *Id.* ¶¶ 13-14; Def.'s Revised Mot. to

Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet) at 5.  En

route to the hospital, Plaintiff asked Officer Nyguen if he was being arrested; Officer Ngyuen

answered in the negative, and informed Plaintiff that he was being "detained," for reasons that he

declined to state.  *Id.* ¶ 14; Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of

Internal Affairs Complaint Summary Sheet) at 5.  Plaintiff was never read his rights by any officer.

Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint

Summary Sheet) at 7.

Ultimately, Plaintiff was never charged with any crime connected to the incidents that day or

Officer Davis' mother.  Compl. ¶ 15.  According to Plaintiff, "[n]one of the defendants had probable

cause or reasonable suspicion to believe" that he was implicated in the carjacking of Officer Davis'

mother; instead, Plaintiff believes that he was targeted "solely because he was a young black male

who happened to be in the general neighborhood where a crime was committed and met some sort of

racially-based generic profile."  *Id.* ¶ 16.  Following the events of February 15, 2004, Plaintiff filed

a complaint regarding this incident with the MPD on February 19, 2004.  *See* Def.'s Revised Mot.

to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet).  The

Summary sheet for Plaintiff's MPD complaint places the location of the incident at "62nd & Banks

Place, NE," on "2/15/04" at approximately "2:20 pm."  *Id.* at 1.  Attached to Plaintiff's MPD

complaint is a five-page "Citizen Complaint Report" charging "Police Bruality" that recounts the

above-described allegations.  Plaintiff's "Citizen Complaint Report" concludes by noting:

> I am very disappointed this happened to me.  I would never have thought [the] D.C.
> police department would humiliate me by mak[ing] me a victim of police brutality.  I
> expected charges to be filed against K. Davis and every officer who allowed this to

happen . . . . Because I will pursue this, I now fear police harassment.

*Id*. at 6-7.

Following Plaintiff's "Citizen Complaint Report," Plaintiff filed a Complaint in this Court on June 27, 2005.  Plaintiff's Complaint originally contained eight counts; however, following the parties September 27, 2005 Stipulation of Partial Dismissal, five counts currently remain for consideration:  (1) Count I, which alleges that Officer Davis violated Plaintiff's Fourth Amendment rights, Compl. ¶ 23; (2) Count II, which alleges that Officers Green, Geer, Underwood, and Nyguen violated Plaintiff's Fourth Amendment rights, *id*. ¶ 24; (3) Count III, which alleges that the District of Columbia violated Plaintiff's Fourth Amendment rights "[b]y maintaining employment, supervision and discipline polices and practices sufficiently lax as to invite and cause the beating of Mr. Shaw, his search and his detention," *id*. ¶ 25; (4) Count IV, which alleges that Officers Davis, Green, Geer, Underwood, and Nyguen violated Plaintiff's Fifth Amendment right to equal protection under the law by targeting him based solely on his race, *id*. ¶ 26; and (5) Count VIII, which alleges that

> [o]n information and belief, the District of Columbia recklessly permitted defendant Davis to participate in an investigation of the carjacking of Davis' mother despite the fact that District officials knew or should have known that such participation would create an unreasonable risk of false arrests and physical assaults by officer Davis upon innocent citizens.  This recklessness was the proximate cause of Mr. Shaw's injuries.

*Id*. ¶ 30.  On September 29, 2005, Defendant District of Columbia filed a Revised Motion to Dismiss or, in the Alternative, for Summary Judgment with respect to Count VIII of Plaintiff's Complaint, alleging that Plaintiff failed to provide statutory notice of this claim as required by D.C. Code § 12-309.  *See* Def.'s Revised Mot. to Dismiss at 1-5.  Plaintiff filed a Memorandum in Opposition or, in the Alternative, a Request for Discovery Pursuant to Federal Rule of Civil

Procedure 56(f) on October 11, 2005, completing the briefing with respect to Defendant's motion.

## II: LEGAL STANDARDS

### A.     Motion to Dismiss

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, unlike resolving a motion under Rule 12(b)(1), the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged.").  While the court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are not supported by the facts set out in the complaint."  *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Moreover, the court is not bound to accept the legal conclusions of the non-moving party.  *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997). The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993). Factual allegations in briefs of memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

B.      *Motion for Summary Judgment*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202  (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251, 106 S.Ct. 2505 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted).  "Mere

7

allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper

motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The

adverse party must do more than simply "show that there is some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986).  Instead, while the movant bears the initial responsibility of

identifying those portions of the record that demonstrate the absence of a genuine issue of material

fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is

a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. 1348 (citing Fed. R. Civ. P. 56(e)) (emphasis in

original).

### III: DISCUSSION

Defendant District of Columbia's Revised Motion to Dismiss or, in the Alternative, for

Summary Judgment with respect to Count VIII (gross negligence) of Plaintiff's Complaint is

premised on one central argument – a contention that Plaintiff failed to provide Defendant with the

required statutory notice of his gross negligence claim, as set forth in D.C. Code § 12-309.  *See*

Def.'s Revised Mot. to Dismiss at 2.  D.C. Code § 12-309 states:

> An action may not be maintained against the District of Columbia for unliquidated
> damages to person or property unless, within six months after the injury or damage
> was sustained, the claimant, his agent, or attorney has given notice in writing to the
> Mayor of the District of Columbia of the approximate time, place, cause, and
> circumstances of the injury or damage.  A report in writing by the Metropolitan
> Police Department, in regular course of duty, is a sufficient notice under this section.

D.C. Code § 12-309 represents an attempt by Congress to provide District officials with "reasonable

notice of [an] accident so that the facts may be ascertained, and if possible, the claim adjusted . . . ."

H.R. Rep. No. 2010 at 2, 72nd Cong., 2d Sess. 1 (1933).  Of particular concern to Congress was

"protect[ing] the District of Columbia against unreasonable claims and . . . assist[ing] it in the

defense of the public interest where claims are made within the 3-year statute of limitations but so long after the event that it is impossible for the District of Columbia to obtain evidence for use in litigation which may result." *Id.* at 1.  Given this intent, the requirements of § 12-309 are mandatory.  *See Wharton v. Dist. of Columbia*, 666 A.2d 1227, 1230 (D.C. 1995); *Hardy v. Dist. of Columbia*, 616 A.2d 338, 340 (D.C. 1992).  The question of whether a plaintiff's attempted notice to the District of Columbia complied with § 12-309 is one of law.  *See Washington v. Dist. of Columbia*, 429 A.2d 1362, 1366 n.15 (D.C. 1981) (en banc).

In this case, it is uncontested that Plaintiff "did not provide his own written notice to the mayor of the appropriate time, place, cause, and circumstances of the injury in this case."  Pl.'s Opp'n at 2.  However, Plaintiff claims that his February 19, 2004 "Citizen Complaint Report," submitted to the MPD and later provided to its Office of Internal Affairs, met the notice requirements of § 12-309.  *Id.*  Plaintiff is correct that proper notice may be obtained through this route, i.e., "[a] report in writing by the Metropolitan Police Department, in regular course of duty."  D.C. Code § 12-309.  "The provision in the statute that permits reports by the police to serve as an alternative form of notice is based on the idea that written notice by a claimant should not be a prerequisite to legal action if, in fact, *actual notice* in the form of a police report has been received by the District."  *Allen v. Dist. of Columbia*, 533 A.2d 1259, 1262 (D.C. 1987) (emphasis in original).

Importantly, "the existence of a police report does not necessarily mean that the District has received the type of actual notice which § 12-309 contemplates."  *Id.*; *Miller v. Spencer*, 330 A.2d 250, 252 (D.C. 1974).  Rather, in order to be considered a sufficient notice, a police report must "contain information as to time, place, cause and circumstances of injury or damage with at least the

same degree of specificity required of a written notice." *Miller*, 330 A.2d at 251 (footnote omitted);

*see also Doe by Fein v. Dist. of Columbia*, 697 A.2d 23, 27 (D.C. 1997). As with written notice

by a claimant, "'[p]recise exactness is not absolutely essential.'" *Pitts v. Dist. of Columbia*, 391

A.2d 803, 807 (D.C. 1978) (quoting *Hurd v. Dist. of Columbia*, 106 A.2d 702, 705 (1954)).

Indeed, the "statutory purposes focus on fairness to the District, and not on technical perfection."

*Washington*, 429 A.2d at 1366 n.14. A notice is sufficient "if it recites facts from which it could be

anticipated that a claim against the District of Columbia might arise." *Pitts*, 391 A.2d at 809; *see*

*also Dixon v. Dist. of Columbia*, 168 A.2d 905, 907 (D.C. 1961) (finding that a notice is sufficient

if the District, "in the exercise of due diligence, should have been able to locate the offending

defect"). In *Washington*, the District of Columbia Court of Appeals clarified the requirements for

proper notice by setting forth the specific information that § 12-309 demands with respect to the

"cause" element:

> [T]he written notice or police report must disclose both the factual cause of the
> injury and a reasonable basis for anticipating legal action as a consequence. Such
> notice would suffice, therefore, if it either characterized the injury and asserted the
> right to recovery, or – without asserting a claim – described the injuring event with
> sufficient detail to reveal, in itself, a basis for the District's potential liability.

*Washington*, 429 A.2d at 1366. "[I]n conformity with *Washington*, § 12-309's requirements with

respect to the *content* of the notice, including the approximate time of the injury, are to be

interpreted liberally, and in close cases [courts are to] resolve doubts in favor of finding compliance

with the statute." *Wharton*, 666 A.2d at 1230 (citing *Hardy*, 616 A.2d at 340; *Gaskins v. Dist. of*

*Columbia*, 579 A.2d 719, 721 (D.C. 1990); *Romer v. Dist. of Columbia*, 449 A.2d 1097, 1101

(D.C. 1982)). Ultimately, when faced with a § 12-309 dispute, courts "implicitly follow a case-by-

case approach in an area where no 'bright line' tests are applicable." *Pitts*, 391 A.2d at 808.

With respect to Plaintiff's "gross negligence" claim contained within Count VIII of his Complaint, Defendant contends that Plaintiff's February 19, 2006 "complaint summary sheet is not sufficient notice of plaintiff's negligence claim against the District of Columbia." Def.'s Revised Mot. to Dismiss at 3.   According to Defendant, while "Plaintiff's negligence claim is based on the District of Columbia allegedly permitting Officer Davis 'to participate in an investigation of the carjacking of [his] mother despite the fact that District officials knew or should have known that such participation would create an unreasonable risk of false arrests and physical assaults by Officer Davis,'" *id.* (quoting Compl. ¶ 30), the material submitted by Plaintiff to the MPD on February 19, 2004 "does not provide any details that would suggest such a basis for liability," *id.*   Defendant emphasizes that "[t]he sheet does not indicate that Officer Davis was investigating a carjacking of his mother or that any particular reason might have existed disqualifying Officer Davis from this investigation." *Id.* at 3-4.   Rather, Defendant contends that "[i]t would appear from the complaint summary sheet that Officer Davis was in the position of any other Metropolitan Police Officer fulfilling his standard duty to investigate criminal conduct." *Id.* at 4.

An analysis of Defendant's argument reveals that it is premised upon an assumption that § 12-309 requires a high degree of specificity in the notice *as to the particular cause-of-action to be asserted* by the potential litigant against the District of Columbia.   For instance, based on its interpretation of the February 19, 2004 Complaint Summary Sheet and Citizen Complaint Report, Defendant maintains that "even assuming that the complaint summary sheet provided sufficient notice of the District's potential liability for assault and battery and false arrest, plaintiff's claim of negligence rests on a separate and distinct basis." *Id.*   Defendant argues that the present or former claims of Plaintiff for assault and battery and false arrest would arise from the actions of the identified officers in allegedly kicking and stomping Plaintiff, which are clearly reported in these

documents. *Id.* However, Plaintiff's claim against the District of Columbia for gross negligence "does not arise from these actions, but rather the actions of unnamed District officials who, plaintiff now claims, negligently permitted Officer Davis to investigate a crime where his mother was the victim" – an alleged offense that Plaintiff asserts falls outside of the details recounted in the February 19, 2004 Complaint Summary Sheet and Citizen Complaint Report. *Id.*

Multiple problems undermine Defendant's argument. As a legal matter, § 12-309 simply does not require the specificity demanded by Defendant – i.e., identification of the precise legal theory upon which a plaintiff seeks relief. Importantly, the statute itself is completely devoid of an explicit requirement that a potential plaintiff provide the District of Columbia with the specific cause-of-action to be asserted in possible future litigation; instead, § 12-309 simply requires notice "of the approximate time, place, cause, and circumstances of the injury or damage." D.C. Code § 12-309. As such, the plain wording of the statute requires a statement of facts, not a series of legal demands. Indeed, the *Pitts* court recognized "that a police report, by its nature, may not fully reflect every salient fact concerning the potential liability of the District with the same degree of clarity and specificity as a document drawn by an attorney." *Pitts*, 391 A.2d at 809. Requiring a police report such as the Citizen Complaint Report, written by Plaintiff, a layperson, and the accompanying Complaint Summary Sheet, drafted by "Lt. Munk" of the MPD, also a non-attorney, *see* Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet) at 1, to specifically set forth complex causes-of-action would obviate the general rule that "[t]he content requirements of any notice under section 12-309 are to be interpreted liberally." *Doe by Fein*, 697 A.2d at 27; *Wharton*, 666 A.2d at 1230.

In contrast to Defendant's contention, the notice simply must be sufficient to meet the basic rationales underlying the creating of § 12-309, namely (1) "to protect the District of Columbia

against unreasonable claims," *Pitts*, 391 A.2d at 807; (2) "to give reasonable notice to the District of Columbia so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted," *id.*; and (3) "to permit the District to conduct an early investigation of the facts and circumstances surrounding such claims" and to prevent the passage of time from rendering such an investigation impossible, *id.* As the *Washington* court emphasized, the notice or police report simply must disclose both (1) "the factual cause of the injury" and (2) "a reasonable basis for anticipating legal action as a consequence." *Washington*, 429 A.2d at 1366.  "In effect, we ask if the District should have anticipated, as a consequence of receiving the police report[], that a complaint by [the person at issue] would be forthcoming." *Allen*, 533 A.2d at 1262.

Here, the February 19, 2004 Complaint Summary Sheet and Citizen Complaint Report clearly meets these requirements.  In these documents, which form the collective police report for the purposes of § 12-309, Plaintiff clearly sets forth both the time and place of his alleged injury – February 15, 2004 at 2:20 p.m. in the park near 62nd and Banks Place, N.E.  *See* Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet) at 1.  Plaintiff then describes the cause and circumstances of his injuries at the hands of various MPD officers in lengthy detail over five handwritten pages, even identifying three of the officers involved (Officers Davis, Green, and Nyguen) by name.  *Id.* at 3, 5.  According to Plaintiff, despite the fact that he was engaged in no criminal activity and was not acting in a suspicious manner, he and other African-American males were rounded up by MPD officers, whereupon Officer Davis – who "was not dressed in his uniform" – placed a gun at Plaintiff's head, yelled at and insulted Plaintiff, threw Plaintiff to the ground, and brutally assaulted Plaintiff to such an extent that he required medical attention.  *Id.* at 1.  Despite the fact that Officer Davis, with no justification, assaulted Plaintiff and threatened to kill him, no other officer intervened to stop the "brutality." *Id.*

The facts relayed by Plaintiff in the applicable police report reflect a quintessential basis upon which claims of Fourth and Fifth Amendment violations, as well as common law assault and battery and false arrest, are typically asserted against the acting police officers and claims against the municipality for various forms of liability – such as negligent supervision, training, or hiring – are also typically brought forth by litigants.  Indeed, Plaintiff here was clear at the earliest stages following the February 15, 2004 incident that (1) he expected the District of Columbia to investigate this matter and (2) he expected to file claims relating to the incident.  Four days after his alleged attack at the hands of Officer Davis, Plaintiff walked into an MPD police station and, under penalty of perjury, drafted a lengthy Citizen Complaint Report to inform the MPD of the asserted incident. In this form, Plaintiff emphasized that he "expect[ed] charges to be filed [against] K. Davis and ever officer who allowed this to happen," and declared that "I will pursue this" in the future.  Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet) at 6-7.  From a very early stage, Plaintiff notified the District of Columbia, through a police report, of an incident for which it could be held liable as a municipality and asked that the District itself commence an investigation – the very point of § 12-309.  Apparently, Plaintiff's request was effective, as "the U.S. Attorney's Office and the Federal Bureau of Investigation are conducting a criminal investigation of the alleged police misconduct in this case."  Def.'s Mot. to Stay Proceedings at 2.

Defendant attempts to escape the inevitable conclusion that the police report in question constituted sufficient notice pursuant to § 12-309 by turning to two cases, *Doe by Fein*, 697 A.2d 23 (D.C. 1997), and *Chidel v. Hubbard*, 840 A.2d 689 (D.C. 2004).  Upon a review, it is clear that each case is inapposite to the facts at hand.  In *Doe by Fein*, the District of Columbia Court of Appeals affirmed the dismissal of a guardian ad litem's § 1983 action on behalf of an abused child

14

against the District of Columbia and its employees for failing to prevent the abuse.  This ruling was based upon a finding that the police reports in question, which the plaintiff attempted to use in order to meet § 12-309's notice requirements, were insufficient; according to the *Doe by Fein* court, "while the police reports in this case suggest that Jane Doe's mother and godmother were incompetent caregivers, they do not establish any prior knowledge *by the District* that Jane had been abandoned, neglected, or abused."  *Doe by Fein*, 697 A.2d at 28.  Indeed, the police reports did "not refer to any direct involvement by the District in determining Jane's primary caretaker or residence." *Id*.  "Because the police reports [did] not suggest any failure by DHS to intervene and take Jane out of what it suspected was an abusive or neglectful home environment, [the court] conclude[d] that they failed to meet the requirements of section 12-309."  *Id*. at 27.  In contrast, the police report at issue in this case – which encompasses the February 19, 2004 Complaint Summary Sheet and Citizen Complaint Report – directly references the District of Columbia, the MPD, and numerous MPD officers.  As such, unlike *Doe by Fein*, wherein the court was confronted with a domestic situation outside of the knowledge of the District of Columbia's agents, here the alleged malfeasance was committed by agents of the municipality itself and directly identified in a report provided to the city's police department.

The District of Columbia Court of Appeals' recent decision in *Chidel v. Hubbard* is equally inapplicable.  Given its tangled background and history of lengthy appeals, *Chidel* is a complicated case with two distinct holdings.  First, in *Chidel*, a plaintiff brought a medical malpractice claim against her doctor, a radiologist, the radiologist's employer, and Greater Southeast Community Hospital.  *See Chidel*, 840 A.2d at 691-92.  Following a settlement by the plaintiff with the District of Columbia and her primary care physician on the eve of trial, a trial wherein the other defendants

were also found to be liable for plaintiff's injuries, and the resolution of various cross-claims and

third-party claims for indemnification and contribution with respect to all defendants by the court,

two defendants sought contribution from the District of Columbia based on the separate, and wholly

independent, negligent acts of two separate co-defendants – each of whom was ultimately

responsible to the District of Columbia.  *Id.* at 692-94.  One of these defendants seeking

contribution, Dr. Chidel, admittedly failed to provide § 12-309 notice within the relevant time

period to the District of Columbia; however, he attempted to escape the requirement that he

personally place the District on notice by arguing that (1) the purposes of the statute were satisfied

because the District knew of the plaintiff's injury from the fact that it represented its own employee

in the litigation from the outset, and (2) he could rely on the timely notice provided by his employer,

a fellow co-defendant, especially where the court had already deemed them "to be one tortfeasor in

the context of contribution."  *Id.* at 694-95.  The Court of Appeals rejected these arguments, finding

that Chidel's first argument failed because Plaintiff herself failed to provide timely notice to the

District pursuant to § 12-309, and determining that Chidel's second argument was also without

merit because the notice obligation was a personal one – i.e., "when circumstances require

compliance with D.C. Code § 12-309, a party seeking contribution from the District of Columbia

who fails to notify the District of his claim may not rely upon his employer's timely § 12-309 notice

to bring a claim against the District."  *Id.* at 696.  As the court emphasized, in the six months after

he was named as a defendant, Dr. Chidel failed to notify the District of his intent to seek

contribution and failed to reveal that Wener, the party who had made a timely § 12-309 notice, was

actually his employer.  *Id.*  As such, this first portion of *Chidel* stands for the simple propositions

that (1) a plaintiff or cross-claimant is personally responsible for their own notice, and (2) a plaintiff

or cross-claimant cannot fail to disclose the independent involvement of a party in its notice, and

then bring suit based on that party's actions.

This first portion of *Chidel* is not implicated in this case, as Plaintiff's Citizen Complaint Report, and the accompanying Complaint Summary Sheet, detailed every actor of significance. Plaintiff named Officer Davis and every other person whom he knew to have been involved, and stressed the complicity of the entire D.C. police department in his injuries.  *See* Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet) at 6-7. While Plaintiff did not directly name Officer Davis' superiors, i.e., the individuals partially responsible for the District's alleged "gross negligence" as set forth in Count VIII, he was not required to make such an identification.  Rather, (1) he provided sufficient information from which the District of Columbia could infer its own negligence from the fact that Officer Davis allegedly ran amok under the color of his authority and position as a police officer and no other officer intervened, and (2) he provided as much information as he could reasonably know such that it could lead the District of Columbia to "those related facts which were peculiarly within its possession." *Rieser v. Dist. of Columbia*, 563 F.2d 462, 476 (D.C. Cir. 1977).  From these facts, "it could be reasonably anticipated that a claim against the District might arise."  *Allen*, 533 A.2d at 1262.

The second aspect of *Chidel* dealt with a cross-appeal by the actual plaintiff against Dr. Chidel's employer, Wener, in which the plaintiff argued "that because Wener's notice failed to inform the District of its intent to sue for the negligent operation of the Southwest Clinic, Wener should be barred from recovering on that theory of liability" – an argument with which the District of Columbia Court of Appeals ultimately agreed.  *Chidel*, 840 A.2d at 696-97.  The *Chidel* court reasoned that

> Wener's notice to the District made absolutely no mention of the District's negligent operation of the Southwest Clinic. Rather, Wener's notice was quite clear that "the liability, if any, in this case rests with Dr. King, and therefore, the District of Columbia as his employer." Given that the notice wholly failed to mention the negligence of the Southwest Clinic, the District could not have "reasonably anticipated" that it would be sued for the negligence of the Southwest Clinic.

*Id*. at 697. As such, the District of Columbia Court of Appeals concluded "that the contents of Wener's timely notice were insufficient to permit a claim regarding the District's negligent operation of the Southwest Clinic." *Id*.

This second holding in *Chidel* is also not implicated in this case for two reasons. First, the *Chidel* court's holding was predicated upon the fact that Wener had identified Dr. King alone as an active tortfeasor in the case, and identified no separate liability/negligence in its notice that the District itself may have committed. *See id*. It was only following a trial and resolution by the trial court of various cross-claims and third-party claims that Wener attempted to obtain indemnification from the District of Columbia under a theory that the Southwest Clinic was responsible in part for plaintiff's injury due to its own "sloppy record keeping" and "failure to locate the missing mammogram results." *Id*. at 692. In contrast, in this case, the police report in question, based on Plaintiff's Citizen Complaint Report and crafted only four days after the alleged incident, is not cabined to an individual employee to the exclusion of the District itself. Rather, read liberally, the District was put on notice that: (1) one of its officers, Officer Davis, allegedly assaulted Plaintiff without justification; (2) four-to-five other MPD officers were present and failed to prevent the assault or intervene to stem its brutality; (3) Officer Davis violated numerous MPD protocols in his detention of Plaintiff, including drawing his weapon without cause and using unwarranted force; and (4) other officers also violated MPD protocols as well, as they cuffed, searched, and detained Plaintiff without reading him his rights, revealing the reason for these actions, or placing him under

arrest.  *See* Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs

Complaint Summary Sheet) at 1-7.  Plaintiff's Citizen Complaint Report does not stop at the

individual officers alone; rather, he states that it was the "D.C. police department" itself that allowed

him to become "a victim of police brutality."  *Id.* at 6.  As such, unlike *Chidel*, Plaintiff here did not

limit his focus to one individual agent of the District; rather, he identified other officers and the

District itself as a potential tortfeasor.  Moreover, *Chidel* dealt with allegations of medical

malpractice, wherein allegations of actual negligence by the municipality itself are somewhat

uncommon; here, Plaintiff's allegations form a classic case for municipal liability against the

District of Columbia for its own negligent training, supervision, or hiring, and Defendant should

have expected corresponding legal action by Plaintiff, who promised "I will pursue this."  *Id.* at 7.

　　　The second reason that the second holding of *Chidel* is inapposite in this case is that in

strictly construing the notice provided by Wener to the District of Columbia, the *Chidel* court

emphasized that "[i]n the instant case, Wener's failure to mention the negligence of the Southwest

Clinic prevented the District from investigating and defendant against this claim."  *Chidel*, 840 A.2d

at 697 n.9.  According to the court, § 12-309 simply "cannot be read to tolerate this kind of 'lack of

precision.'"  *Id.*  Here, the District of Columbia does not contend, nor can it accurately maintain,

that the police report in question left it unaware of its possible liability for gross negligence resulting

out of the events of February 15, 2004.  *See generally* Def.'s Revised Mot. to Dismiss.  Instead, as

pointed out previously, currently "the U.S. Attorney's Office and the Federal Bureau of

Investigation are conducting a criminal investigation of the alleged police misconduct in this case."

Def.'s Mot. to Stay Proceedings at 2; *cf. Allen*, 533 A.2d at 1264 ("By providing the District with

the details necessary for it to go directly to the governmental departments involved in the injuring

event and received additional information about the basis for the claim, Allen's notice satisfied the

'circumstances' requirement of § 12-309."). Ultimately, this case is vastly different from *Chidel*,

wherein the plaintiff "failed to give timely notice to the District of her injury," *Chidel*, 840 A.2d at

696, and Wener waited until *after trial* to assert a claim against the District for its own separate

negligence, *id.* at 692; instead, in this case, Plaintiff notified the District of Columbia of his injuries

and its potential liability only *four days* after the incident itself. *See* Def.'s Revised Mot. to

Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs Complaint Summary Sheet) at 1.

Upon a review, Plaintiff's case is simply not analogous to the situations encountered in *Doe*

*by Fein* and *Chidel*. Instead, two cases mentioned previously, *Pitts v. District of Columbia*, 391

A.2d 803 (1978), and *Rieser v. District of Columbia*, 563 F.2d 462 (D.C. Cir. 1977), are most on

point. In *Pitts*, the District of Columbia Court of Appeals held that a police report which disclosed

that a child had slipped through a guard rail of a public housing project owned by the District,

provided the identities of the people directly involved in the incident, and set forth the story of how

the child got there was sufficient to put the District of Columbia on notice of a negligence claim.

*See Pitts*, 391 A.2d at 809-10. Importantly, the report in *Pitts* did not specifically say that the

(future) plaintiff believed that there was a negligence claim, and the report did not name the person

who was believed to be negligent or who had a duty to maintain the premises. *Id.* Instead, the

report simply recited the facts of the situation, requiring the District to read the report and

understand that ownership of the land gave rise to potential negligence liability. *Id.* Despite the fact

that the plaintiff failed to provide the District with an explicit, spoon-fed negligence claim, the *Pitts*

court found that requiring more under § 12-309 "would effectively read the police report alternative

out of the statute." *Id.* at 810. Likewise, while Plaintiff here did not use the term "gross

negligence" in his Citizen Complaint Report, nor did he explicitly make a connection between

Officer Davis's actions and the officer's mother, Plaintiff's descriptions are the archetype of a

municipal liability/negligence claim, and he frequently referred to statements by Officer Davis

indicating that the alleged assault was related to an ongoing criminal investigation by the officer.

*See* Def.'s Revised Mot. to Dismiss, Ex. A (Feb. 19, 2004 MPD Office of Internal Affairs

Complaint Summary Sheet) at 3 (noting that Officer Davis was apparently investigating a crime

committed against an elderly citizen, given that he was screaming "y'all like ****ing with old

people[,] Huh!"), at 4 (noting that the elderly victim was apparently a woman, as Officer Davis

screamed that he would kill Plaintiff "if she points you out").  Like the plaintiff in *Pitts*, Plaintiff

here was not obligated to announce the words "negligent supervision" or explicitly link Officer

Davis' actions to his investigation of his mother's carjacking for the District (a fact outside of his

knowledge); rather, he was simply required to produce "facts from which it could be reasonably

anticipated that a claim against the District might arise" and allow further investigation by the

District – a standard clearly met by Plaintiff.  *Pitts*, 391 A.2d at 809.

Similarly, an application of *Rieser* to this case supports the denial of Defendant's Revised

Motion for Summary Judgment.  In *Rieser*, the D.C. Circuit dealt with an action brought by the

father of a woman who was raped and murdered by a District of Columbia parolee who had been

assisted by the D.C. Department of Corrections in obtaining employment at the apartment complex

where the murder took place; the father's lawsuit named as defendants the owners of the apartment

complex, the parolee, the parole officer, and the District of Columbia.  *See Rieser*, 563 F.2d at 465-

69.  While the plaintiff-father gave the District of Columbia "no express written notice of any

claim," the district court "found the requirement satisfied by police reports incident to [the parolee's]

arrest for the Rieser murder, and by letters from the Department of Corrections and Parole Board to

other District officials, including the mayor." *Id*. at 476.  While the District of Columbia argued

that these documents did not afford it notice of the causal connection between the injury and any

negligent acts of its agents, the D.C. Circuit concluded that the police reports constituted adequate

notice given that the time and place of the event were clear, the identities of all parties were clear,

and the fact that the killer was a parolee was clear; as such, "the police reports provided the District

notice of the principal facts sufficient to lead it to those related facts which were peculiarly within its

possession." *Id*.  Here, like in *Rieser*, Plaintiff's notice encompassing the whole cast of characters,

their relationship to the District (which, like a parolee relationship, gives rise to a duty of care), and

their behavior necessarily gives rise to notice of the District of Columbia's potential liability for

failing to appropriately train, supervise, or hire those within its control.  Nothing further is required,

as the *Rieser* court recognized:

> The District has cited no support for the broad construction that it urges for the
> statutory words "cause" and "circumstances," and our review of the cases and the
> legislative history reveals none.  In addition, nothing in the statute or the case law
> requires that the plaintiff give notice of intent to bring suit.

*Id*. at 477.

Ultimately, in reviewing the relevant February 19, 2004 police report, containing the

Complaint Summary Sheet and Citizen Complaint Report, in light of the "liberal" construction to be

afforded Plaintiff, it is clear that Defendant's Revised Motion to Dismiss or, in the Alternative, for

Summary Judgment with respect to Count VIII of Plaintiff's Complaint must be denied.  Four days

after an alleged assault by one MPD officer relating to an investigation that he was conducting,

wherein four-to-five other MPD officers took no action and further violated MPD protocol, Plaintiff

walked into an MPD station and produced a lengthy, detailed Citizen Complaint Report.  This

document notified the District of Columbia of the approximate time and place of the incident, and

relayed the cause and circumstances of the alleged injury to the full extent of Plaintiff's knowledge.

Plaintiff identified numerous officers involved by name, provided the District of Columbia with a

firm foundation at an early stage in the process from which it could conduct an investigation,

notified the District of his intent to "pursue" his claims, and included the entire "D.C. police

department" within those he felt were liable for the events of February 15, 2004.  Plaintiff's factual

allegations embodied a classic claim against a municipality for negligent training, supervision, or

hiring – a claim later brought to life, in part, in Count VIII of Plaintiff's Complaint in this action.

Given these facts, the Court concludes that the District of Columbia was provided notice of

Plaintiff's "gross negligence" claim sufficient to satisfy the dictates of § 12-309.

### IV: CONCLUSION

For the reasons set forth above, the Court shall deny Defendant's Revised Motion to Dismiss

or, in the Alternative, for Summary Judgment with respect to Count VIII of Plaintiff's Complaint.

An appropriate Order accompanies this Memorandum Opinion.

Date:   May 8, 2006

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge