UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DARRON SHAW,

   Plaintiff,

  v.

DISTRICT OF COLUMBIA,

   Defendants.

Civil Action No. 05-1284 (CKK)

**MEMORANDUM OPINION**
(May 15, 2006)

Plaintiff Darron Shaw brought this action on June 27, 2005. As currently constituted following the parties Stipulation of Partial Dismissal, Plaintiff's Complaint sets forth the following claims arising out of an alleged incident of police brutality at the hands of the Metropolitan Police Department ("MPD"), which occurred on February 15, 2004: (1) Count I, which alleges that Officer Kevin Davis violated Plaintiff's Fourth Amendment rights by beating and detaining him with no legitimate law enforcement purpose, Compl. ¶ 23; (2) Count II, which alleges that Officers Keith Green, Jonathan Geer, Robert Underwood, and Minh Nyguen violated Plaintiff's Fourth Amendment rights by participating in the detention and search of Plaintiff without probable cause or reasonable suspicion, *id*. ¶ 24; (3) Count III, which alleges that the District of Columbia violated Plaintiff's Fourth Amendment rights "[b]y maintaining employment, supervision and discipline policies and practices sufficiently lax as to invite and cause the beating of Mr. Shaw, his search and his detention," *id*. ¶ 25; (4) Count IV, which alleges that Officers Davis, Green, Geer, Underwood, and Nyguen violated Plaintiff's Fifth Amendment right to equal protection under the law by targeting him based solely on his race, *id*. ¶ 26; and (5) Count VIII, which alleges that the District of Columbia was guilty of "gross negligence" when it permitted Officer Davis to investigate a

carjacking involving his mother, *Id.* ¶ 30.

Following the filing of his Complaint, Plaintiff encountered some difficulty in effectuating service against the MPD officers named as Defendants – Officers Kevin Davis, Keith Green, Jonathan Geer, Robert Underwood, and Minh Nguyen.[1]  Following several attempts at service through certified mail and a process server, on October 18, 2005, Plaintiff filed a "Motion to Deem All Individual Defendants Served, and in the Alternative for an Order that Defendant District of Columbia Require Its Police Officer Defendants to Accept Service[,] for an Extension of Time to Effectuate Service, and for an Order Requiring Said Police Officers to Bear the Costs of Service" ("Pl.'s Mot. Re: Service").  Upon consideration of Plaintiff's motion, Defendant District of Columbia's Opposition,[2] Plaintiff's Reply, the attached exhibits, and the entire record herein, the Court shall grant-in-part and deny-in-part Plaintiff's motion.  Specifically, the Court shall grant Plaintiff's motion to the extent that it requests an extension of time to effectuate service; however, to the extent that Plaintiff's motion seeks other relief, the Court shall deny Plaintiff's motion.[3]

---

[1] There appears to be some controversy with respect to the spelling of Defendant Minh Nguyen's name.  Plaintiff's Complaint uses the spelling "Nyguen."  *See* Compl. at 2.  However, Defendants' Notice of Joinder uses the spelling "Nguyen."  *See* Notice of Joinder at 1.  For the purposes of consistency, the Court shall use the spelling employed by Defendants in their Notice of Joinder until informed otherwise once an Initial Scheduling Conference in this case is set.

[2] On November 19, 2005, Defendants Jonathan Geer, Keith Green, Robert Underwood, and Minh Nyguen filed a Notice of Joinder informing the Court that they were joining in Defendant District of Columbia's Opposition to Plaintiff's motion.

[3] Pursuant to Federal Rule of Civil Procedure 4(m), Plaintiff had 120 days from the date of his Complaint, June 27, 2005, to serve all Defendants with a summons and a copy of the Complaint.  October 25, 2005 is approximately 120 days from date of the Complaint's filing.  Based upon the record, it is clear that Defendants Jonathan Geer and the District of Columbia were served within the Rule 4(m) time period.  Defendants Green, Underwood, and Nguyen were also successfully served, and filed three separate Answers on November 17, 2005.  However, it appears that these three Defendants were not successfully served until November – outside of the Rule 4(m) time frame.  *See* Pl.'s Reply at 7.  As such, the Court shall grant Plaintiff's motion *nunc pro tunc* to the extent that

## I: BACKGROUND

Plaintiff Darron Shaw filed this action on June 27, 2005 against the District of Columbia and individual Defendants Kevin Davis, Keith Green, Jonathan Geer, Robert Underwood, and Minh Nguyen – each of whom is an MPD officer. Plaintiff seeks damages arising out of an incident of alleged police brutality on February 15, 2004. On the day he filed his Complaint, Plaintiff obtained summonses for all Defendants. *See* Pl.'s Mot. re: Service, Ex. A (Initial Summonses). Plaintiff contends that he then duly served all Defendants by certified mail, return receipt requested. *See id.* at 2. However, Plaintiff does not indicate when he attempted such service, nor did he attach any return receipts from this service attempt. *See id.* Ultimately, Plaintiff successfully effectuated service on Defendant the District of Columbia on July 19, 2005, leading to its appearance in this case through the Office of the Attorney General. *See* 8/29/05 Return of Service/Aff. of Summons and Compl. Executed.

According to Plaintiff, he had no information as to the individual stations to which the individual Defendant/police officers were assigned. *See* Pl.'s Mot. re: Service at 2. "Mindful of the understandable safety concerns of police officers," Plaintiff also did not attempt to obtain the home addresses of the individual Defendants for purposes of service. *Id.* Rather, this initial attempt at service "attempted to serve the individual defendants by certified mail addressed to police headquarters," and Plaintiff "anticipated the appropriate forwarding of the summonses by District police authorities to the defendants, so that the lawsuit might proceed without undue difficulty." *Id.* However, Plaintiff's counsel received nothing in response to this initial service attempt, with the

---

additional time was needed to successfully serve these three officer-Defendants. Defendant Kevin Davis has yet to be served, and another summons for Defendant Davis was issued on May 4, 2006. As outlined in the Order accompanying this Memorandum Opinion, the Court shall provide Plaintiff with an additional 45 days with which to serve Defendant Davis.

exception that another MPD officer, P. Nyugen, called Plaintiff's counsel to advise him that the service packet intended for Officer Minh Nguyen had been mistakenly forwarded to him. *Id.* Officer P. Nyugen returned the service packet, and it was re-sent to MPD headquarters c/o Officer Minh Nguyen. *Id.* No response from the individual Defendants/police officers was forthcoming, though it is unclear based on the record whether they ever received this first attempt at service.

Following this initial attempt, Plaintiff's counsel waited nearly two months to contact counsel for Defendant the District of Columbia in order to request assistance in serving the individual officer Defendants. *Id.* at 3; *see also* Defs.' Opp'n at 3. By a letter dated September 12, 2005, the Attorney General's office provided Plaintiff with the station addresses and phone numbers where each individual Defendant was currently assigned, as well as information on the MPD's procedures for facilitating service of process on individual officers. *See* Pl.'s Mot. re: Service, Ex. B (9/12/05 Letter from Attn'y Gen.'s Office to Pl.'s Counsel). With this information, Plaintiff again attempted to serve the individual Defendant/police officers by certified mail by requesting a waiver of service, focusing this time on the officers' assigned district stations. Plaintiff's counsel added a letter, which explained the situation and sought the officers' cooperation, to the service packet containing the Complaint and necessary forms for acceptance of service. *Id.*, Ex. C (9/15/05 Letter from Pl.'s Counsel to Individual Defs.). Plaintiff's letter offered the individual Defendant/police officers until October 15, 2005 to return the signed waivers of service. *Id.*, Ex. C (9/15/05 Letter from Pl.'s Counsel to Individual Defs.) at 2. This packet did not include a second summons, and was potentially valid as service only if the recipients acknowledged receipt of the Complaint and thereby waived formal service pursuant to Federal Rule of Civil Procedure 4(d). *See* Pl.'s Mot. re: Service at 3.

Once again, this attempted service proved unsuccessful. While Plaintiff claims that Officers

Green, Geer, and Davis received this service packet by signing return receipts, *id.* at 3, a review of the return receipts indicates that two of the signatures are utterly illegible (the Green and Davis return receipts), while the other return receipt contains a signatures of another officer unrelated to this case (named Timothy Hennigan), not the intended officer (Geer). *Id.*, Ex. D (Return Receipts from Pl.'s Second Attempt). The other two service packets went "unclaimed," and were returned to Plaintiff's counsel (the Underwood and Nguyen packets). *Id.*, Ex. E (Certified Mail Packets Stamped "Unclaimed").

With the 120 deadline under Federal Rule of Civil Procedure 4(m) due in late October 2005, Plaintiff's counsel attempted another service tactic in early October, despite the fact that his September 15, 2005 letter to the officers gave them until October 15, 2005 to waive service. *See* Pl.'s Mot. re: Service at 3. Plaintiff obtained appropriate alias summonses naming each individual Defendant at his station, and retained a process server to attempt to effect personal service, beginning October 7, 2005. *Id.*, Ex. F (Second Set of Summonses). Plaintiff's process server made repeated attempts at serving the individual Defendants/police officers, but was only able to successfully serve Defendant Jonathan Geer (at a cost of $212.50). *Id.*, Ex. G (Alliance Legal Services, Inc. Invoices to Pl.).

With respect to Officer Davis, Plaintiff's process server (1) left a phone message on October 6, 2005 with another officer asking that Officer Davis return Plaintiff's phone call because Officer Davis was out of the office; (2) visited Officer Davis' station on October 7, 2005, but was informed that it was the officer's day off; (3) visited Officer Davis' station on October 11, 2005, but was again informed that he was off for the day; and (4) visited Officer Davis' station on October 14, 2005, but was told that Officer Davis was out in the field on assignment. *Id.*, Ex. H (Alliance Legal Services' Documentation re: Service Attempts). With respect to Officer Underwood, Plaintiff's

process server (1) left a phone message on October 6, 2005 with another officer asking that Officer Underwood return Plaintiff's phone call; (2) visited Officer Underwood's station on October 7, 2005, but was informed that he was apparently off on sick leave; (3) visited Officer Underwood's station on October 11, 2005, but was informed that Officer Underwood was not due to report to work for several more hours, which was contrary to previous information provided to Plaintiff's process server; and (4) visited Officer Underwood's station on October 14, 2005 but was told that the officer was "out on injury" with an unknown return date. *Id.* With respect to Officer Nguyen, Plaintiff's process server (1) left a phone message on October 6, 2005 with another officer asking that Officer Nguyen return Plaintiff's phone call; (2) visited Officer Nguyen's station on October 7, 2005, was informed that the officer was not in the station, and was told Officer Nguyen's typical days off; (3) visited Officer Nguyen's station on October 11, 2005, was informed that the officer would be in at 2:00 p.m., and waited until 2:05 p.m. for the officer, who did not appear; (4) visited Officer Nguyen's station on October 12, 2005, and was told that the officer was not in that day; and (5) visited Officer Nguyen's station on October 14, 2005, waited for thirty minutes while the desk sergeant looked for the officer, and was then informed that he had already left the station. *Id.* Finally, with respect to Officer Green, Plaintiff's process server (1) spoke with another officer about Officer Green on October 6, 2005, and was told that Officer Green would be in on October 7, 2005 from 1:00 p.m. to 2:00 p.m. "unless a car was stolen which required his attention"; (2) visited Officer Green's station on October 7, 2005 and was informed that he was not present; (3) visited Officer Green's station on October 11, 2005 and was told that the officer was off for the day; (4) visited Officer Green's station on October 12, 2005 and, after other officers searched the premises, was told that he was not present; and (5) visited Officer Green's station on October 14, 2005, was told that the officer was present, waited thirty minutes, and was then informed that he was not in the

station. *Id.* Including the cost of attempting to serve Officer Geer, Plaintiff spent $1,067.50 attempting to serve the individual Defendants/police officers through his process server. *Id.*, Ex. G (Alliance Legal Services, Inc. Invoices to Pl.).

Following these efforts, Plaintiff's counsel sent an email to Defendant the District of Columbia's counsel on October 12, 2005. *See* Pl.'s Mot. re: Service, Ex. I (10/12/05 E-Mail from Pl.'s Counsel to Def. Dist. of Columbia's Counsel). In this email, Plaintiff's counsel contended that the officers were obstructing service but provided no details to support this contention, nor did he provide any information about the process server's attempts. *Id.* at 1. Plaintiff's counsel requested "that the District order these officers to make themselves available forthwith for efficient service of process, and provide me with clear direction as to how this may be accomplished forthwith." *Id.* At the request of the counsel for Defendant the District of Columbia, Plaintiff's counsel provided more information from his process server in an email dated October 14, 2005. *See* Pl.'s Mot. re: Service, Ex. J (First 10/14/05 E-Mail from Pl.'s Counsel to Def. Dist. of Columbia's Counsel). In this letter, Plaintiff's counsel represented that he would seek relief from the Court were service not to be guaranteed forthwith. *Id.* at 1. In another email on this same day, Plaintiff's counsel informed counsel for Defendant District of Columbia that he would wait until Wednesday, October 19, 2005 to allow the District of Columbia to formulate a response; after that date, Plaintiff's counsel pledged that he would file a motion with the Court. *See* Pl.'s Mot. re: Service, Ex. K (Second 10/14/05 E-Mail from Pl.'s Counsel to Def. Dist. of Columbia's Counsel).

However, prior to the October 19, 2005 deadline, Plaintiff filed with this Court a "Motion to Deem All Individual Defendants Served, and in the Alternative for an Order that Defendant District of Columbia Require Its Police Officer Defendants to Accept Service[,] for an Extension of Time to Effectuate Service, and for an Order Requiring Said Police Officers to Bear the Costs of Service."

This pre-deadline motion came as a surprise to counsel for Defendant District of Columbia, as he was in the process of consulting with his supervisor and formulating a response during this time. *See* Defs.' Opp'n at 4. Following Plaintiff's motion, but prior to Defendants' Opposition on November 1, 2005, a separate Assistant Attorney General was assigned to represent the individual Defendants/police officers and was provided authorizations to accept service on their behalf. *Id.* at 5. Following this assignment, Defendants Keith Green, Robert Underwood, and Minh Nguyen were each successfully served, and each entered a separate Answer to Plaintiff's Complaint on November 17, 2005. In contrast to these Defendants, Officer Davis – the officer central to Plaintiff's Complaint – was not successfully served; rather, according to Defendants' Opposition, "[t]he District still requires additional time to seek through assigned counsel authorization or some other alternative accommodation for service on Officer Davis." *Id.* As of this date, Officer Davis has not been successfully served, although another summonses was issued to Plaintiff for Officer Davis on May 4, 2006.

## II: DISCUSSION

Given the events leading up to and immediately following Plaintiff's October 18, 2005 motion, "Defendants Geer, Green, Underwood and Nguyen have now been served, and the court need take no further action with regard to securing their proper service." Pl.'s Reply at 2. As such, to the extent that Plaintiff's motion seeks "to Deem All Individual Defendants Served, and in the Alternative for an Order that Defendant District of Columbia Require Its Police Officer Defendants to Accept Service," Plaintiff's motion must be denied as moot with respect to these four individual Defendants/police officers. However, three issues remain outstanding for the Court's resolution: (1) Plaintiff's motion to deem Defendant Kevin Davis served, despite the fact that service of process has not yet been effectuated upon him; (2) Plaintiff's motion seeking an extension of time to effectuate

service; and (3) Plaintiff's motion "for an Order Requiring Said Police Officers to Bear the Costs of Service." *Id.*

*A. Motion to Deem Defendant Kevin Davis Served*

According to Plaintiff, "Officer Davis – who is, incidentally, the one accused of actually beating Plaintiff – has filed no affidavit attesting to his unawareness of the suit, or his non-receipt of counsel's communications to him, or his unawareness that a process server was trying to serve him as per the instructions of counsel for the District." Pl.'s Reply at 4. Plaintiff contends that the record of repeated service attempts, as well as his process server's affidavit, highlight the fact that Officer Davis is actively avoiding service in this case. *Id.* In light of this alleged avoidance, Plaintiff asks that this Court take one of three possible steps: (1) deem Officer Davis constructively served; (2) order the District of Columbia to make him available for service at no further cost to Plaintiff; or (3) provide Plaintiff with Officer Davis' home address such that service may be effectuated at his place of residence. *Id.* at 4-6 & n.3. Multiple problems exist to undermine each of these requests.

Importantly, "[v]alid service of process is necessary in order to assert personal jurisdiction over a defendant." *Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991) (citation omitted); *accord United States v. Hill*, 694 F.2d 258, 261 (D.C. Cir. 1982) ("Personal jurisdiction in a civil suit implies, among other things, either voluntary appearance by the defendant or valid service of process on him at the place where he may be found.") (citation omitted). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolph Wolff Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). A plaintiff is responsible for service of the summons and complaint within the time period set forth in Federal Rule of Civil Procedure 4(m). *See* Fed. R.

Civ. P. 4(c)(1). Indeed, "[t]he plaintiff bears the burden of proving the validity of service if it is challenged." *Whitehead v. CBS/Viacom, Inc.*, 221 F.R.D. 1, 2 (D.D.C. 2004) (citing *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992); *Zen Music, Inc. v. CVS Corp.*, Civ. No. 98-4246, 1998 WL 912102, at *2 (S.D.N.Y. Dec. 30, 1998); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1353 (2d ed. 1990)). Even where the plaintiff has diligently attempted service, "the requirements of Rule 4 are satisfied only when the plaintiff is successful in serving the complaint and summons on the defendant." *Mid-Continent Wood Prods.*, 936 F.2d at 302. It is well-established that a named defendant's actual knowledge of a lawsuit is no substitute for proper service of process under Federal Rule of Civil Procedure 4. *See id.* at 301 (citing *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir. 1998); *Sieg v. Karnes*, 693 F.2d 803, 807 (8th Cir. 1982)); *see also LSJ Inv. Co. v. O.L.D., Inc.*, 167 F.3d 320, 322 (6th Cir. 1999); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1155-56 (6th Cir. 1991); *but cf. Ali v. Mid-Atlantic Settlement Servs.*, 233 F.R.D. 32, 35-37 (D.D.C. 2006) (suggesting that "[w]here the defendant receives actual notice and the plaintiff makes a good faith effort to serve the defendant pursuant to the federal rule, service of process has been effective").

Plaintiff attempts to overcome the general requirements for valid service of process by contending that Officer Davis was evading service. Plaintiff has a heavy burden in proving this accusation. *See Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (holding that "the party on whose behalf service is made has the burden of establishing its validity when challenged"). While courts have often held that intentional evasion by a defendant will be sufficient to perfect the service, *see Nikwei v. Ross Sch. of Aviation, Inc.*, 822 F.2d 939, 945-46 (10th Cir. 1987), the plaintiff must establish "clear and convincing evidence of evasion on the part of the defendant" in order to avoid

the typical service requirements, *see Mid-Continent Wood Prods.*, 936 F.2d at 303. Moreover, proof of evasion of service cannot be inferred alone from "repeated, though faulty attempts at service." *Id.*

The record does not sustain, by clear and convincing evidence, Plaintiff's claim that Officer Davis has been intentionally evading service of process. Plaintiff points to both his efforts at serving Officer Davis via the mail and through his process server as evidence that the officer is avoiding service. *See* Pl.'s Mot. re: Service 5-6; Pl.'s Reply at 4-5. In this case, there is simply no definitive evidence that any officer – including Officer Davis – refused service by mail. Plaintiff has no return receipts at all for his first attempted service, which was mailed to each of the officers at MPD headquarters, *see* Pl.'s Mot. re: Service at 2, and while Plaintiff does have a return receipt for the second mailing, which was addressed to Officer Davis at his specifically assigned district station, the receipt does not appear to be signed by Officer Davis himself, *see id.*, Ex. D (Return Receipts from Pl.'s Second Attempt) (the signature itself is illegible, but does not appear to be consistent with the name "Kevin Davis"). As such, this is not a case like *Nikwei*, where there was ample evidence that the defendant was either successfully served through the mail or repeatedly endeavored to avoid service through the mail by concealing his whereabouts. *See Nikwei*, 822 F.2d at 942-43, 945.

Moreover, the affidavit from Plaintiff's process server also fails to establish an evasion of service by Officer Davis. *See* Pl.'s Mot. re: Service, Ex. H (Alliance Legal Services' Documentation re: Service Attempts). As noted previously, with respect to Officer Davis, Plaintiff's process server (1) left a phone message on October 6, 2005 with another officer asking that Officer Davis return Plaintiff's phone call because Officer Davis was out of the office; (2) visited Officer Davis' station on October 7, 2005, but was informed that it was the officer's day off; (3) visited Officer Davis' station on October 11, 2005, but was again informed that he was off for the day; and

(4) visited Officer Davis' station on October 14, 2005, but was told that Officer Davis was out in the field on assignment. *Id.* Numerous deficiencies are evident on the face of the affidavit provided by Plaintiff's process server. Based on the affidavit, it is unknown whether the process server requested Officer Davis' specific work schedule (hours of duty, days off) from the desk sergeant. Moreover, on the first two occasions that the process server appeared in person at the assigned station, Officer Davis was not scheduled to work. When the process server actually showed up on a day that Officer Davis was scheduled to work (October 14, 2005), Officer Davis was out on an assignment, and the server failed to wait until Officer Davis was scheduled to check off duty. Moreover, the affidavit does not reflect whether the process server ever left any notification about when she might return such that Officer Davis could ensure his appearance. *See id.* Given these facts, it is clear that Plaintiff cannot, by clear and convincing evidence, establish that Officer Davis was intentionally evading Plaintiff's process server.

As such, because Plaintiff cannot meet the standards necessary to justify the extraordinary relief of "deeming" Officer Davis served without proper service, the Court shall deny Plaintiff's motion to the extent it seeks to have Officer Davis "deemed served." In the alternative, Plaintiff also requests that the Court either compel the District of Columbia to accept service on Officer Davis' behalf, or provide Officer Davis' home address to Plaintiff. *See* Pl.'s Reply at 4-5 & n.3. Given the current record, the Court shall also deny Plaintiff's request to the extent that it seeks either of these service remedies.

Importantly, the District of Columbia is not authorized to order an officer to meet with a process server or accept a summons in a civil case. *See* Defs.' Opp'n, Ex. A (MPD General Order 701.4) at Part I(A)(3). Nor is the District of Columbia authorized to disclose an officer's home address; D.C. Code § 5-111.06 (2001) prohibits such a disclosure to protect the safety of the officer

and his or her family. Rather, the MPD encourages its members to accept proper personal service of summonses on themselves in civil cases related to the performance of their duties, and prescribes a specific procedure to facilitate personal service of process on its officers. *Id.* Process servers seeking to serve a police officer shall be directed to a desk sergeant or designated administrative official at the district station, who then determines if the officer is available to be notified. *Id.* at Part I(A)(4). If the officer is present and available, the desk sergeant notifies the member, who then informs the desk sergeant whether he or she will meet with the process server. *Id.* The desk sergeant then relays the officer's response to the process server. *Id.* However, if the officer is not present, the MPD requires that the desk sergeant assist the process server in making further attempts at service by (1) detailing the officer's duty hours; (2) telling the process server when the officer will be reporting at the unit; and (3) asking the process server if he or she will be attempting service at that time or at a future time and date. *Id.* If the process server states that he or she will return at a specified time, the officer shall be notified of the visit and the date and time when service will be attempted again. *Id.*

Accordingly, the MPD has specific procedures in place to aid plaintiffs in effectuating service of process against its officers. Based on the present record, it is clear that while Plaintiff's process server certainly made efforts to personally serve Officer Davis after the uncertain attempts made through the mail, Plaintiff's process server ultimately made only one attempt at personal service when Officer Davis was actually scheduled to work, and the process server failed to wait a short time until Officer Davis checked off duty. *See* Pl.'s Mot. re: Service, Ex. H (Alliance Legal Services' Documentation re: Service Attempts). While the Court certainly sympathizes with Plaintiff's frustration, clear and convincing evidence of evasion sufficient to justify compelling the District of Columbia to accept service on the officer's behalf or provide his home address is simply not present. However, as described *infra*, the Court shall provide Plaintiff with additional time to

serve Officer Davis, as well as to allow the District of Columbia the time it requested to seek authorization or some other alternative accommodation. If continued efforts are unsuccessful and evidence of evasion present, the parties can certainly revisit extraordinary options such as those suggested by Plaintiff.

*B. Motion for Extension of Time*

In the alternative, Plaintiff requests additional time to serve the "uncooperative defendants" – i.e., Officer Davis. *See* Pl.'s Mot. re: Service at 6-7. Once it has been established that proper service of process has not been made within the 120-day time period, there is a two-step inquiry under Rule 4(m). *See Taylor v. The Stanley Works*, No. 4:01-CV-120, 2002 WL 32058966, at *6 (E.D.Tenn. July 16, 2002). First, the court determines whether the plaintiff has established "good cause" for failing to timely effect service of process. *Id.* The plaintiff bears the burden of showing good cause. *Habib v. Gen. Motors Corp.*, 15 F.3d 72, 73 (6th Cir. 1994); *Friedman*, 929 F.2d at 1157; *see also Whitehead*, 221 F.R.D. at 3. Good cause may exist if the defendant intentionally evades service. *Id.* However, inadvertence or negligence on the part of plaintiff's attorney and the attorney's clerical employees does not constitute good cause, nor does a defendant's actual notice of the complaint or a lack of prejudice to defendant constitute good cause. *See Taylor*, 2002 WL 32058966, at *6 (citations omitted). If a plaintiff has not established good cause, the court may still – in its discretion – permit late service. *See Henderson v. United States*, 517 U.S. 654, 658 n.5, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996); *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005) (citing cases); *Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 89-90 (D.D.C. 2004). When a plaintiff cannot show good cause, the court should consider and balance the following factors: (1) whether a significant extension of time is required; (2) whether an extension

of time would cause actual prejudice to the defendant other than the inherent "prejudice" in having to defend the lawsuit; (3) whether the defendant has actual notice of the lawsuit; (4) whether dismissal of the complaint without prejudice under Rule 4(m) would substantially prejudice the plaintiff, i.e., cause the plaintiff's suit to be time-barred by the statute of limitations; and (5) whether the plaintiff has made diligent, good faith efforts to effect proper service of process. *See Taylor*, 2002 WL 32058966, at *6 (citations omitted); *Spencer v. Steinman*, 968 F. Supp. 1011, 1014-15 (E.D.Pa. 1997) (citing cases).

Upon an analysis of the record, the Court determines that Plaintiff should be granted an extension of time to serve Officer Davis. While Plaintiff has not established the kind of evasion of service of Officer Davis' part that would meet the criteria for "good cause," Plaintiff has certainly not been negligent or inadvertent in his service attempts. Instead, Plaintiff has made multiple efforts by mail and process servers to effectuate service, and enlisted the assistance of counsel for the District of Columbia. Moreover, "the court has no indication that granting the plaintiff extra time to perfect service works great prejudice on" Officer Davis. *Wilson*, 332 F. Supp. 2d at 89; *see also M.K. v. Tenet*, 99 F. Supp. 2d 12, 17-18 (D.D.C. 2000) (granting plaintiff additional time to serve unknown CIA defendants despite plaintiff's failure to do anything by way of service for eight month – twice the statutory time). As such, the Court shall grant Plaintiff an additional 45-days from the date of this Memorandum Opinion and Order to serve Officer Davis; if Plaintiff fails to serve Officer Davis by that time, Plaintiff should file another motion with the Court detailing his service efforts, and the Court may revisit the earlier, extraordinary remedies suggested by Plaintiff that were simply premature at this time and based on this record. The Court does suggest that Plaintiff contact counsel for the District of Columbia, given that the District has suggested that some possible "authorization or some alternative accommodation for service on Officer Davis" is possible. Defs.'

Opp'n at 5.

In addition to Officer Davis, who has yet to be served, the record is unclear whether Defendants Green, Underwood, and Nguyen were served within the 120-day limitation period provided by Rule 4(m). Assuming *arguendo* that these Defendants were not served within the requisite time period, the Court shall grant *nunc pro tunc* Plaintiff's motion for extension of time as it relates to these three Defendants, thereby permitting the possibly untimely service.

*C. Plaintiff's Motion for Costs*

Finally, Plaintiff requests that this Court order the individual Defendant/police officers to "pay the unnecessary costs of service," and the costs of Plaintiff's motion, due to "their ongoing and unjustifiable effort to avoid service," as illustrated by their failure to comply with a request of waiver and their alleged attempts at avoidance of personal service. Pl.'s Mot. re: Service at 8-9. Plaintiff emphasizes that pursuant to Federal Rule of Civil Procedure 4(d)(2) and (d)(5), a defendant who fails to respond in a timely fashion to a request for waiver of service of summons is liable for all costs incurred, together with the costs of bringing a motion to recover those costs and attorney's fees. *Id.* at 8.

Under Rule 4(d)(2), "[i]f a defendant located within the United States fails to comply with a request for waiver made by a plaintiff located within the United States, the court shall impose the costs subsequently incurred in effecting service on the defendant unless good cause for the failure be shown." Pursuant to this rule, Plaintiff mailed a request for waiver of service to the individual Defendants/police officers on September 15, 2005. Because the waiver of service was sent on September 15, 2005, the individual Defendants had thirty (30) days, until October 15, 2005, to return a signed waiver. *See* Pl.'s Mot. re: Service, , Ex. C (9/15/05 Letter from Pl.'s Counsel to Individual Defs.) at 2. Despite the October 15, 2005 deadline, which was outlined in Plaintiff's

letter accompanying his waiver requests, Plaintiff nevertheless prematurely proceeded with efforts to personally serve the officers beginning on October 7, 2005. *See* Pl.'s Mot. re: Service, Ex. H (Alliance Legal Services' Documentation re: Service Attempts). Indeed, the service costs for which Plaintiff now seeks recovery were all incurred prior to October 15, 2005. *See id.*

An award of costs is not appropriate in this situation for two reasons. First, contrary to Plaintiff's allegations, there is no proof that the individual officers received the requests for waiver of service. The three return receipts apparently do not reflect the signatures of those officers to whom the waivers were addressed. *Id.*, Ex. D (Return Receipts from Pl.'s Second Attempt). Moreover, the other two letters were returned as "unclaimed," not "refused" as Plaintiff suggests. *Id.*, Ex. E (Certified Mail Packets Stamped "Unclaimed"). If the officers did not receive the waivers, good cause would exist for why costs should not be imposed. *See Henry v. Glaize Maryland Orchards, Inc.*, 103 F.R.D. 589, 590-91 (D.Md. 1984) (holding that defendant was not liable for cost of personal service when the prior mailed summons was returned to plaintiff's attorney marked "unclaimed").

Second, the Advisory Committee Notes to Federal Rule of Civil Procedure 4 explain that costs are not recoverable where formal service is sought concurrently with a waiver of service. According to the Advisory Committee:

> Some plaintiffs may send a notice and request for waiver and, without waiting for return of the waiver, also proceed with efforts to effect formal service on the defendant. To discourage this practice, the cost-shifting provisions in paragraphs (2) and (5) are limited to the costs of effecting service *incurred after the time expires for the defendant to return the waiver*.

Fed. R. Civ. P. 4 advisory committee's notes (1993) (emphasis added); *accord Chapman v. New York State Div. for Youth*, 227 F.R.D. 175, 179 (N.D.N.Y. 2005). Here, because (1) Plaintiff failed to wait until the time expired for the individual Defendants/police officers to return the waiver

(October 15, 2005), and (2) seeks to recover costs incurred during the 30-day time period, Plaintiff is forbidden under the Federal Rules of Civil Procedure from recovering any costs of service, including the filing of Plaintiff's motion. Accordingly, to the extent that Plaintiff's motion seeks costs to be imposed on the individual Defendants relating to service, Plaintiff's motion is denied.

## III: CONCLUSION

For the reasons set forth above, the Court shall grant Plaintiff's motion to the extent that it requests an extension of time to effectuate service; however, to the extent that Plaintiff's motion seeks other relief, the Court shall deny Plaintiff's motion at this time. An appropriate Order accompanies this Memorandum Opinion.

Date: May 15, 2006

*/s/*
COLLEEN KOLLAR-KOTELLY
United States District Judge